UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------x

UNITED STATES OF AMERICA,      :

                           :        01 Cr. 1110 (LAP)

      -v.-              :

                           :        MEMORANDUM
                           :        & ORDER

RICARDO SILVA,              :

                           :

               Defendant.   :

--------------------------------x

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is Defendant Ricardo Silva's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. no. 172 (the "Motion").) The Government opposed, (dkt. no. 177), and Defendant did not reply. The Motion is denied because Defendant has not demonstrated extraordinary and compelling circumstances justifying his release and because early release is not warranted under the Section 3553(a) factors.

## I.   Background

### A. Offense Conduct

    As set forth in detail in the Presentence Investigation Report ("PSR") issued by the United States Probation Office on March 27, 2024, Defendant was a member of a drug-trafficking organization referred to as the "Hoe Avenue Crew" that operated principally in the vicinity of 914 Hoe Avenue in the Bronx. (PSR ¶ 30.) Defendant was a longtime drug user and sold heroin to make money to feed his drug habit. (Id. at ¶ 34.) But Defendant's most important role in the organization was as a hired gun. The

Hoe Avenue Crew sold drugs in a competitive location where other crews operated nearby. (Id.) Defendant served as the enforcer of the location where the Hoe Avenue Crew operated, and he protected the drug dealers from being robbed. (Id.) At least twice in the 1990s, Defendant accepted offers from other members of the Hoe Avenue Crew to kill rival drug dealers for money. (Id.)

In 1993, other members of the Hoe Avenue Crew started a drug war with a man known as Bola. Bola was the leader of a crack/cocaine organization also based on Hoe Avenue. (Id. at ¶ 39.) Bola's workers sold crack in the same building as the Hoe Avenue Crew. (Id.) That arrangement worked for a while because the two groups were selling different drugs, and so they were not in direct competition. (Id.) However, tensions between the two crews increased over time. Bola's younger brother, Victor Rivera, was a heroin user, and he was accused of robbing the Hoe Avenue Crew of heroin. (Id.) Rivera was also accused of robbing guns and jewelry from other members of the Hoe Avenue Crew. (Id.) By November 1993, other members of the Hoe Avenue Crew decided that Rivera needed to be killed. (Id. at ¶ 40.)

On November 13, 1993, members of the Hoe Avenue Crew threw a party at the Parkside Plaza, located in the Bronx, to establish an alibi for leaders of the crew. (Id.) While other members of the crew attended the party, Defendant found Rivera at a pay phone on Bruckner Boulevard and shot him once in the back of the

2

head at point-blank range and left him dead on the sidewalk. (Id.)

Bola later attempted to retaliate but was unsuccessful. (Id. at ¶ 41.) Defendant and other members of the Hoe Avenue Crew then struck back. (Id. at ¶ 42.) They found three of Bola's men and, armed with .45 caliber semi-automatic pistols and a Tech 9 machine gun, opened fire on the three individuals. (Id.) While one of the men managed to escape up a flight of stairs, Fernando Rivas Causcut and Robert Quinones were killed by the gunfire. (Id.) After the shooting was completed, Defendant and others who participated in the hit were paid $5,000 each by the leader of the Hoe Avenue Crew for successfully completing the murders. (Id.)

Over the lifetime of the conspiracy from 1991 to 2002, the Hoe Avenue Crew sold at least 30 kilograms of heroin. (Id. at ¶ 47.) From 1992 to 1994, the Hoe Avenue Crew sold approximately 350 grams of heroin per week or approximately 1.4 kilograms of heroin per month. (Id.)

### B. Procedural History

Defendant was charged in a twelve-count Indictment, No. 01 Cr. 1110 (GEL) (the "Indictment") along with three other members of the Hoe Avenue Crew. Following a jury trial in 2005, Defendant was convicted of the following offenses:

- Count One: Racketeering, in violation of 18 U.S.C. § 1962(c);

3

- Count Two: Racketeering Conspiracy, in violation of 18 U.S.C. § 1962(d);

- Count Five: Murder While Engaged in a Continuing Criminal Enterprise, in violation of 21 U.S.C. § 848(e)(1)(A);

- Count Six: Murder While Engaged in a Continuing Criminal Enterprise, in violation of 21 U.S.C. § 848(e)(1)(A);

- Count Seven: Murder While Engaged in a Continuing Criminal Enterprise, in violation of 21 U.S.C. § 848(e)(1)(A);

- Count Eleven: Conspiracy to Distribute and Possess with Intent to Distribute Heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846; and,

- Count Twelve: Using and Carrying a Firearm During and in Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. §§ 924(c) and 2.

### C. Defendant's Sentence

Defendant was sentenced by the Honorable Gerard E. Lynch on August 14, 2006. The Court calculated the applicable Guidelines range to be life imprisonment based on an offense level of 47 (which, as a practical matter, translated into offense level 43-the highest level available under the Guidelines) and Criminal History Category VI. (Sentencing Transcript ("Sent. Tr.") at 6.)

The Court imposed non-parolable life sentences of imprisonment on Counts 1, 2, 5, 6, 7, and 11, all to run concurrently. The Court additionally imposed a 60-month sentence

of imprisonment on Count 12 to run consecutively to the life sentences. At sentencing, the Court stated, and the parties agreed, that due to the filing of two prior felony Informations, a life sentence on Count Eleven was mandatory. (Sent. Tr. at 4-5.)

### D. Current Custody Status

Defendant has been in federal custody since September 24, 2004, (PSR at 5), for a little over 20 years.

Defendant is currently incarcerated at Allenwood FCI. According to the website for the Federal Bureau of Prisons ("BOP"), as of December 16, 2024, there were no active cases of COVID-19 among FCI Allenwood's 1,242 inmates and no active cases among staff. See Federal Bureau of Prisons, BOP COVID-19 Statistics, https://www3.fed.bop.gov/coronavirus/covid19_statistics.html (last visited Dec. 16, 2024). No inmates have died from COVID-19, and 453 inmates have fully recovered. Id.

## II. Discussion

### A. Applicable Law

Under 18 U.S.C. § 3582, as amended by the First Step Act, the court "may not modify a term of imprisonment once it has been imposed except that":

> [T]he court, upon motion of the Director of the Bureau of Prisons [(the "BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf

5

or the lapse of 30 days from the receipt of such a
request by the warden of the defendant's facility,
whichever is earlier, may reduce the term of
imprisonment (and may impose a term of probation or
supervised release with or without conditions that does
not exceed the unserved portion of the original term
of imprisonment), after considering the factors set
forth in section 3553(a) to the extent that they are
applicable, if it finds that . . . extraordinary and
compelling reasons warrant such a reduction . . . and
that such a reduction is consistent with applicable
policy statements issued by the Sentencing
Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

"Originally, § 3582(c)(1)(A) did not permit defendants to
initiate compassionate release proceedings; it required the BOP
to seek such release on their behalf." United States v. Corbett,
No. 10 Cr. 184 (PAE), 2023 WL 8073638, at *3 (S.D.N.Y. Nov. 21,
2023) (citing United States v. Phillibert, 557 F. Supp. 3d
456, 459 (S.D.N.Y. 2020). But in 2018, Congress enacted the
First Step Act and "authorized courts to reduce a term of
imprisonment upon motion by a defendant." United States v. Amato,
48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

The Sentencing Commission is responsible for "describ[ing]
what should be considered extraordinary and compelling reasons
for sentence reduction, including the criteria to be applied and
a list of specific examples." 28 U.S.C. § 994(t). Accordingly,
even before the First Step Act was enacted, the Sentencing
Commission promulgated a policy statement—Section 1B1.13 of the
Guidelines—concerning sentence reductions under Section 3582,

which explained, among other things, what constitutes an
extraordinary and compelling reason for a sentence reduction.

In September 2020, the Court of Appeals held that this policy
statement "applied only to a 'motion of the Director of the Bureau
of Prisons,' see U.S.S.G. § 1B1.13 (historical note), and not 'to
compassionate release motions brought by defendants[.]'"
Corbett, 2023 WL 8073638, at *3 (quoting United States v. Brooker,
976 F.3d 228, 236 (2d Cir. 2020)). As a result, the Court of
Appeals explained that the policy statement did not "constrain
district courts' discretion to consider whether any reasons are
extraordinary and compelling." Brooker, 976 F.3d at 236. Even
though Section 1B1.13 did not govern compassionate release
motions filed by a defendant, district courts were nevertheless
able to "look[] to § 1B1.13 for guidance in the exercise of
[their] discretion" when considering such a motion. United States
v. Rodriguez, No. 16 Cr. 07 (AJN), 2020 WL 7640539, at *3
(S.D.N.Y. Dec. 23, 2020).

However, "[e]ffective November 1, 2023, . . . the Sentencing
Commission amended the Guidelines to also cover defendant-
initiated petitions." Corbett, 2023 WL 8073638, at *3 (citing
U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88
Fed. Reg. 28,254 (effective Nov. 1, 2023)). "The amended guidance
from the Commission as to what constitutes extraordinary and
compelling reasons now controls the analysis of a compassionate
release petition, however initiated." Id. Section 1B1.13 of the

Guidelines, as amended, explains what circumstances, "singly or in combination," constitute extraordinary and compelling reasons for release. Id. These include, at a high level, certain medical circumstances of the defendant, the age of the defendant, certain family circumstances, whether the defendant was the victim of abuse while in custody, other circumstances of similar gravity, and changes in law that make the defendant's sentence unusually long. See U.S.S.G. § 1B1.13(b); United States v. Mendez-Rojas, No. 11 Cr. 929 (PAE), 2024 WL 4345561, at *3 (S.D.N.Y. Sept. 30, 2024).

In short, when a court considers a motion for compassionate release filed by a defendant, the court may only grant that motion where the defendant has demonstrated that (i) he has exhausted his administrative remedies, (ii) there are extraordinary and compelling reasons for a reduction of the sentence, (iii) the Section 3553(a) factors favor such a reduction, and (iv) such a reduction is consistent with the Sentencing Commission's policy statements. See 18 U.S.C. § 3582(c)(1)(A)(i). The defendant, as the proponent of the motion, bears the burden of proving that he is entitled to the requested relief under Section 3582. See United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); United States v. Ebbers, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020) ("The defendant has the burden to show he is

entitled to a sentence reduction.") (citing <u>Butler</u>, 970 F.2d at 1026); <u>United States v. Givens</u>, No. 14 Cr. 546-09 (CM), 2020 WL 4699042, at *2 (S.D.N.Y. Aug. 13, 2020) (similar).

Additionally, if the Court "concludes that the applicable § 3553(a) factors do not support a sentence reduction, it need not determine whether the defendant has shown extraordinary and compelling reasons." <u>United States v. Giattino</u>, No. 23-6918-cr, 2024 WL 4579342, at *2 (2d Cir. Oct. 25, 2024) (summary order) (citing <u>United States v. Keitt</u>, 21 F.4th 67, 73 (2d Cir. 2021) (per curiam)); <u>see also</u> <u>United States v. Ramirez</u>, 571 F. Supp. 3d 40, 45 (S.D.N.Y. 2021) ("A court may still deny compassionate release where the § 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.").

### B. Application

#### i. Defendant has not Established an Extraordinary and Compelling Reason for Compassionate Release

Defendant argues that there are multiple factors that provide an extraordinary and compelling reason for granting the Motion. Those factors include: (1) the impact of the COVID-19 pandemic upon his confinement; (2) the continued risk of severe illness by virtue of his confinement; (3) the risk of severe illness due to his former ADHD diagnosis and depression; (4) if he were sentenced today he would not face a mandatory life sentence on Count Eleven due to changes in the law; and, (5) his

rehabilitation.  None of these factors, either singly or taken together, are sufficient to demonstrate an extraordinary and compelling reason for compassionate release.

First, Defendant has received two doses of the COVID-19 Moderna vaccine on May 5, 2021 and June 2, 2021.  (Dkt. no. 177, Ex. A, 2022 Medical Record, at 51.[1])  Defendant additionally received the Moderna vaccine booster on December 16, 2021.  (Id.) According to the CDC, "COVID-19 vaccines available in the United States are safe and effective at protecting people from getting seriously ill, being hospitalized, and dying. . . . As with vaccines for other diseases, people are best protected when they stay up to date."  CDC, COVID-19 Benefits of Getting Vaccinated (Sept.                      3,                    2024), https://www.cdc.gov/covid/vaccines/benefits.html (last visited Dec. 16, 2024).

Numerous courts in this District have found that inmates who are fully vaccinated have not demonstrated extraordinary and compelling reasons for their release based on COVID-19.  See, e.g., United States v. Gomez, No. 15 Cr. 348 (PGG), 2024 WL 4818704, at *5 (S.D.N.Y. Nov. 15, 2024); United States v. Saunders, No. 15 Cr. 153-6 (VSB), 2024 WL 4850810, at *3-4 (S.D.N.Y. Nov. 20, 2024); United States v. Jaber, No. S1 13 Cr.

---

[1] Exhibits A and B are omitted from the public filing, as they contain Defendant's BOP medical record and BOP disciplinary record.

485 (CM), 2022 WL 35434, at *2-3 (S.D.N.Y. Jan. 4, 2022); United States v. Jones, No. 17 Cr. 214 (CM), 2021 WL 4120622, at *2-3 (S.D.N.Y. Sept. 9, 2021); United States v. Barnett, No. 90 Cr. 913 (LAP), 2021 WL 3550217, at *3 (S.D.N.Y. Aug. 10, 2021); United States v. Arbabsiar, No. 11 Cr. 897 (JFK), 2021 WL 2433757, at *3-4 (S.D.N.Y. June 15, 2021); United States v. Santana, No. 18 Cr. 865 (VEC), 2021 WL 1819683, at *2-3 (S.D.N.Y. May 6, 2021).

Second, Defendant argues that COVID-19 has negatively impacted the conditions of his confinement and that the COVID-19 variants and subvariants in circulation have placed him at greater likelihood to contract severe COVID-19. Essentially, Defendant has articulated a generalized concern that because he is in prison, he is at increased risk of contracting COVID-19. This is insufficient to establish an "extraordinary and compelling reason" justifying compassionate release. See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even with the rise of new variants and subvariants, this Court has repeatedly denied motions for compassionate release brought by those concerned with catching COVID-19. See Gomez, 2024 WL 4818704, at *2, 5 (denying compassionate release sought in light of COVID-19 B-117 variant);

United States v. Muyet, No. 95 Cr. 941 (LAP), 2024 WL 2830825, at *4 (S.D.N.Y. June 3, 2024) (collecting cases); Jaber, 2022 WL 35434, at *3 (citing Studies Suggest Why Omicron Is Less Severe: It Spares the Lungs, https://www.nytimes.com/2021/12/31/health/covid-omicron-lung-cells.html. ) ("[R]ecent studies have revealed that Omicron causes a less serious infection in most people, specifically sparing the lungs, while vaccination still provides excellent protection against the most severe consequences of even this new variant – death and extended hospitalization."); United States v. Sosa, No. 14 Cr. 468-1 (AT), 2022 WL 1690833, at *3-4 (S.D.N.Y. May 26, 2022); United States v. Batista, No. 19 Cr. 2 (JFK), 2022 WL 443647, at *1 (S.D.N.Y. Feb. 14, 2022).

Third, Defendant points to two main health conditions—ADHD and depression—to meet his burden of establishing an extraordinary and compelling circumstance. He claims that his ADHD diagnosis has been listed as a high-risk factor by the CDC and that there is "ample evidence documented record that [he] suffered from mental conditions, ADHD, PTSD and substance abuse." (Dkt. no. 172 at 3.) In support of this, he cites to a mitigation report prepared in 2003 in the context of assisting the United States Attorney's Office to decide whether it should seek the death penalty for Defendant's offenses. That report discusses, inter alia, Defendant's ADHD and substance abuse history. But there is nothing in his current medical records suggesting that

he is currently being treated for ADHD.  And even if he were, as
noted above, the COVID-19 vaccine and boosters that he received
provide protection against severe forms of the disease.
Additionally, Defendant's current medical records reflect that
in 2022 he reported depression and anxiety.  He is currently
being treated with Trazadone for these conditions, and they
nonetheless do not constitute extraordinary and compelling
circumstances.  United States v. Derounian, 16 Cr. 412 (JMA)(JMW),
2022 WL 6162551, at *2 (E.D.N.Y. Oct. 7, 2022) (Defendant's health
conditions, including depression and post-traumatic stress
disorder, were found to be insufficient to warrant compassionate
release).

Fourth, citing United States v. Townsend, 897 F.3d 66 (2d
Cir. 2018), Defendant argues that he would no longer face a
mandatory life sentence if he were sentenced today on Count
Eleven.  Townsend held, inter alia, that because the criminal
sale of a controlled substance in the fifth degree, in violation
of New York Penal Law § 220.31, criminalizes the sale of a drug
that is not included in the Controlled Substances Act, it cannot
be a predicate offense for an enhanced sentence under U.S.S.G. §
2K2.1(a).

Townsend has little relevance to Defendant's Motion.
Defendant received a mandatory life sentence for his conviction
of conspiracy to distribute and possess with intent to distribute
heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A),

and 846 and the filing of two prior felony Informations for "felony drug offenses" under 21 U.S.C. § 841(b)(1)(A). Townsend, by contrast, addressed whether the criminal sale of a controlled substance in the fifth degree qualified as a "controlled substance offense" under the Guidelines. Nevertheless, Defendant appears correct in his argument that if he were sentenced today on Count Eleven, he would no longer face a mandatory minimum life sentence, albeit for a different reason. And that is because the First Step Act reduced the mandatory minimum sentence applicable to Defendant's crime, lowering it from life to 25 years. See Pub. L. No. 115-391, § 401(a)(2), 132 Stat. 5194, 5220 (2018).

Construing Defendant's Motion liberally and addressing the merits of whether the nonretroactive reduction of the mandatory term of life imprisonment of the crime to which Defendant was charged is properly considered in a compassionate release motion, "[t]he circuits have split on whether courts may consider such intervening but expressly nonretroactive sentencing statutes" as an extraordinary and compelling circumstance. United States v. Jenkins, 50 F. 4th 1185, 1198 (D.C. Cir. 2022). It does not appear that the Second Circuit has addressed this issue directly. United States v. Chavez, No. 02 Cr. 1301 (VM), 2024 WL 4850808, at *3 n.2 (S.D.N.Y. Nov. 21, 2024) ("The Second Circuit has not adopted such a rule."); United States v. Pierce, No. 11 Cr. 576 (PKC), 2024 WL 2219739, at *9 (S.D.N.Y. May 15, 2024) (collecting

district court decisions because no direct Second Circuit precedent exists).

But even assuming arguendo, that the Court were permitted to consider this as a factor in analyzing whether extraordinary and compelling circumstances exist, Defendant's Motion nonetheless fails because the balance of considerations that Defendant presents are neither extraordinary nor compelling. In Musa v. United States, 502 F. Supp 3d 803 (S.D.N.Y. 2020), the Court addressed a nearly identical argument that due to the nonretroactive reduction of the mandatory minimum sentence of life imprisonment to 25 years under 21 U.S.C. § 841(b)(1)(A) brought on by the passage of the First Step Act, the defendant should be granted compassionate release. Judge Richard J. Sullivan considered this argument in connection with the other factors advanced by the defendant for compassionate release, including his poor record of rehabilitation and the defendant's alleged failing health due to, inter alia, glaucoma and a torn meniscus. The Court concluded that while the defendant's "sentence measured against offenders sentenced after passage of the First Step Act may seem unfair, that disparity was clearly contemplated by Congress when it decided not to make the Act's sentencing reforms retroactive" and, "[m]ore importantly, [the defendant] has not identified other individualized factors warranting a reduction in sentence under the First Step Act." Id. at 814. Likewise, as discussed above, Defendant's alleged

medical conditions do not support a finding of extraordinary and compelling circumstances.

Moreover, Defendant's claims of rehabilitation are severely undermined by his prison disciplinary record. On May 9, 2022, Defendant admitted to possessing heroin. On October 8, 2020, he admitted to being insolent to a prison staff member. On March 7, 2020, Defendant tested positive for Suboxone. And on June 3 and July 17, 2019, Defendant tested positive for unspecified narcotics and was found to have used drugs/alcohol. He also received numerous other disciplinary infractions preceding the ones mentioned above. (See dkt. no. 177, Ex. B, Disciplinary Record.[2]) Defendant's recent possession of heroin and drug use are particularly concerning given that his underlying crimes involved murdering multiple people in connection with being an enforcer in a major heroin-trafficking organization.

For these reasons, Defendant has failed to demonstrate extraordinary and compelling reasons for his release.

### ii. The Section 3553(a) Factors Counsel Against Release

Even if Defendant could demonstrate extraordinary and compelling reasons, the Section 3553(a) factors counsel heavily against compassionate release. See, e.g., United States v.

---

[2] Exhibits A and B are omitted from the public filing, as they contain Defendant's BOP medical record and BOP disciplinary record.

Monsanto Lopez, No. 16 Cr. 643-1 (NRB), 2020 WL 2555305 (S.D.N.Y. May 20, 2020) (even if defendant could show extraordinary and compelling circumstances, Section 3553(a) factors strongly counsel against release); United States v. Garcia, No. 16 Cr. 719-2 (RJS), 2020 WL 2539078, at *2 (S.D.N.Y. May 19, 2020) (same); United States v. Reese, No. 12 Cr. 629 (VM), 2020 WL 2554381, at *2 (S.D.N.Y. May 20, 2020) (same).

As set forth above and noted by Judge Lynch at sentencing, Defendant's murder of three people "were not ordinary murders, if any murder can be so-called," but were "committed in the coldest blood as part of a war between criminal gangs to control turf for the sale of narcotics." (Sent. Tr. at 20.) His past crimes were "multiple and continuous, and they call for an extremely severe sentence to mark the seriousness of the offenses, as well as the need for deterrence. And, most of all, in order to protect the public from his constant, violent, law breaking." (Id. at 20.) Judge Lynch stated that under the Guidelines "both the score for the seriousness of your offenses and the score for your criminal history both are literally off the charts, higher than the highest categories provided in the law." (Id.) And while noting that "I have no power to give you any sentence short of a minimum of life plus five years," Judge Lynch nonetheless stated "I do think that this is a sentence that you have earned by your actions. I don't believe it is unjust or unreasonable.

Having taken several lives, your own life is and should be essentially forfeited." (Id. at 21.)

What Judge Lynch said at sentencing remains equally true today. The Defendant snuffed out multiple lives as part of a war between criminal gangs to control turf for the sale of narcotics. Both Defendant's total offense level and criminal history points were literally off the charts. If any defendant is undeserving of compassionate release, it is this Defendant. Killing multiple people in cold blood as part of a drug war is about as serious an offense as is possible to commit, and it deserves the most serious punishment. Defendant's disciplinary record indicates that he has not been rehabilitated and thus continues to present a danger to his fellow citizens. And, as always, the need to deter others from engaging in these kinds of crimes remains strong. For all these reasons, the Section 3553(a) factors counsel against release.

### III. Conclusion

For the reasons set forth above, Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), dkt. no. 172, is denied. As the motion makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of

an appeal.  Cf. Coppedge v. United States, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of the Court shall close dkt. no. 172 and mail a copy of this Order to Defendant.

**SO ORDERED.**

Dated:     New York, New York
           December 17, 2024


                        _____
                        LORETTA A. PRESKA
                        Senior United States District Judge